IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROGER CAUDILL, and BRITTNEY SMITH, | 4:08CV3122 |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| DEPT. HEALTH AND HUMAN SERVICES, et al., | |
| Defendants. | |

This matter is before the court on the remaining Defendants' Motion to Dismiss. (Filing No. 30.) As set forth below, the Motion is granted.

### I. BACKGROUND AND SUMMARY OF COMPLAINT

Plaintiffs filed their Complaint on June 6, 2008 against the Nebraska Department of Health and Human Services ("HHS"), Sara Jelinek, Heidi Phillipi ("Phillipi"), and Liz Kendall (together, the "HHS Defendants"). (Filing No. 1.) Plaintiffs also alleged claims against Beatrice Police Officer Christina Vath ("Vath") and Rick Schreiner ("Schreiner"). (*Id.*) Summarized and condensed, Plaintiffs allege that on February 26, 2007, Plaintiff Caudill's son E.C.[1] reported to his school that he was being abused. (*Id.* at CM/ECF p. 2.) Later that day, Vath went to Plaintiff's home to get clothes for E.C. and Plaintiffs later received "papers" indicating that E.C. was being placed in state custody because he was "in immediate danger." (*Id.*) E.C. was placed in a foster home and Plaintiffs were permitted supervised visits with him for several months. (*Id.* at CM/ECF p. 3.)

---

[1]In accordance with Federal Rule of Civil Procedure 5.2, the court will use initials, rather than the minor's full name.

In August 2007, Plaintiffs "admitted to a no-fault petition" and E.C. was placed back in Plaintiffs' home in October 2007. (*Id.*) However, on October 20, 2007, Plaintiffs discovered that E.C. "was sleeping w/ knives" and E.C. was admitted to the CAPS Unit[2] until November 21, 2007. (*Id.*) Phillipi, an HHS employee, agreed that E.C. should be admitted to the CAPS Unit. When E.C. was released from the CAPS Unit, he was placed in another foster home, rather than back at home with Plaintiffs. (*Id.* at CM/ECF pp. 3-4.)

In December 2007, Plaintiffs discovered that Schreiner and Phillipi "were seeing each other." (*Id.* at CM/ECF p. 4.) Plaintiffs do not know how long Schreiner and Phillipi were "seeing each other," but they were "seeing each other" while working on E.C.'s case. (*Id.*) During the period of time that these Defendants worked on E.C.'s case, "police documents were falsified to take [E.C.] out of the home." (*Id.*) However, Plaintiffs do not have copies of the alleged falsified documents because Vath will not release the documents from the Beatrice Police Department. (*Id.*)

Plaintiff Caudill has ADHD and Plaintiff Smith has epilepsy. Plaintiffs also have two young daughters in their home, and these girls remained in their care even while E.C. was removed from the home. (*Id.* at CM/ECF pp. 4-5.) Plaintiffs primarily seek the return of E.C. to their home, but also seek "restitution, police reports, medical and school records, and that all work relating to E.C. be "done with federal agent present." (*Id.* at CM/ECF p. 5.)

On December 17, 2008, the court granted Vath's and Schreiner's separate Motions to Dismiss on the grounds that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine. (Filing No. 29.) On that same date, the court granted the HHS

---

[2]From the restricted exhibits filed with the Complaint, it is apparent that the "CAPS Unit" is a psychiatric unit at BryanLGH Hospital in Lincoln, NE. (Filing No. 1-3, Attach. 2, at CM/ECF p. 7.)

2

Defendants' Motion for Leave to Answer Out of Time. The HHS Defendants filed their Motion to Dismiss and Brief in Support on December 29, 2008. (Filing Nos. 30 and 31.) Plaintiffs did not respond to the Motion. (*See* Docket Sheet.)

## II. ANALYSIS

### A. Standard of Review

In order to withstand a motion to dismiss, a pro se plaintiff must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or else their complaint must be dismissed for failing to state a claim upon which relief can be granted. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (overruling *Conley v. Gibson,* 355 U.S. 41 (1967), and setting new standard for failure to state a claim upon which relief may be granted). Regardless of whether a plaintiff is represented or is appearing pro se, the plaintiff's complaint must allege specific facts sufficient to state a claim. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). However, a pro se plaintiff's allegations must be construed liberally. *Burke v. North Dakota Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1043-1044 (8th Cir. 2002) (citations omitted).

### B. The HHS Defendants' Motion to Dismiss

On December 17, 2008, the court entered a Memorandum and Order dismissing Plaintiffs' claims against Vath and Schreiner because the claims were barred by the *Rooker-Feldman* doctrine. (Filing No. 29.) The HHS Defendants argue that the claims against them must also be dismissed because the relief sought by Plaintiffs requires alteration or reversal of a state-court order in violation of the *"Rooker-Feldman* doctrine." (Filing No. 31 at CM/ECF pp. 5-7.) The court agrees. As set forth in its previous Memorandum and Order, a federal district court does not possess authority in a civil rights case to review or alter final judgments of a state court

3

judicial proceeding. The *Rooker-Feldman* doctrine prohibits lower federal courts from exercising appellate review of state court judgments. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). In fact, federal district courts do not have jurisdiction "over challenges to state-court decisions . . . even if those challenges allege that the state court's action was unconstitutional." *Feldman*, 460 U.S. at 486. In short, the "*Rooker-Feldman* doctrine" bars this court from correcting or altering a state court judgment, and no declaratory or injunctive relief is available in this court to do so.

Here, Plaintiffs allege that they "admitted to a no-fault petition" in October 2007 in the Nebraska state court. (Filing No. 1 at CM/ECF p. 3.) As a result, E.C. was placed back in Plaintiffs' home, but was later removed from their home again. (*Id.*) In this action, Plaintiffs seek the return of E.C. to their home, restitution, police reports, medical and school records, and that all work relating to E.C. be "done with federal agent present." (*Id.* at CM/ECF p. 5.) As the court previously found, it is clear that there are ongoing state court proceedings regarding E.C. The police reports and records sought by Plaintiffs are from September 2006 "on to present." (Filing No. 25 at CM/ECF p. 1.) Although Plaintiffs did not respond to the HHS Defendants' Motion to Dismiss, in their response to the other Motions to Dismiss, Plaintiffs state that their "purpose" with this action is "to reverse a decision made on the no fault petition." (*Id.*) As set forth above, the court has no jurisdiction to reverse or otherwise alter the state-court decision with respect to the no fault petition or documentation to which Plaintiffs are entitled as a result of the no-fault petition. Because *Rooker-Feldman* prevents the court from ordering the relief sought by Plaintiffs, the HHS Defendants' Motion to Dismiss is granted.[3]

IT IS THEREFORE ORDERED that:

---

[3]Because Plaintiffs' claims are dismissed under *Rooker-Feldman*, the court need not address the HHS Defendants' other arguments.

4

1.	Defendants Jelinek, Phillipi, Kendall, and the Nebraska Department of Health and Human Services' Motion to Dismiss (filing no. 30) is granted.

2.	A separate judgment will be entered in accordance with this Memorandum and Order.

March 31, 2009.                    BY THE COURT:

                                   s/ Joseph F. Bataillon
                                   Chief United States District Judge